IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHEAQUITA FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:04-CV-00558-B |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Cheaquita Fields ("Fields") applied in January 2002 for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §1381 et seq.[1] Following an administrative denial of her application, Fields received a requested hearing, represented by counsel, before an administrative law judge ("ALJ"), who rendered an unfavorable decision on July 16, 2003. Because the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"), and this judicial review proceeds pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c). Careful scrutiny of the record and briefs compels the court's conclusion that the Commissioner's decision should be reversed and remanded for further administrative consideration.

---

[1] Before the age of eighteen, Fields filed SSI applications in 1999 and 2001; though both were denied initially, she did not pursue further review. Acknowledging the filing of her present application "less than two years from the date of the initial determination under the first application, the ALJ found "no cause for reopening either application, 'good' or otherwise, ...." (R. 34, *citing* 20 C.F.R. § 416.1488 and Social Security Ruling 88-1c).

## I.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.  The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). The Commissioner's decision must be considered conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is less than a preponderance; instead, it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Crawford v. Commissioner of Soc. Sec.*, 363 F.2d 1155, 1158-59 (11th Cir. 2004); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  Because substantial  evidence is "more than a scintilla," *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987), it "must do more than merely create a suspicion of the existence of the fact to be established." *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

The court must examine the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Commissioner's decision will be reversed, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health & Human Servs.*, 21 F. 3d 1064, 1066 (11th Cir. 1994).

## II. ADMINISTRATIVE FINDINGS

Fields, age 20 at the time of the hearing, has a high school education. She alleges the onset of disabling disability on July 1, 1998, and has not engaged in substantial gainful work since January 8, 2002. The ALJ determined that Fields has systemic lupus erythematosus[2], myalgia, arthralgia,[3] dysthymic disorder[4], tension headaches, and is status-post fibroadenoma."[5] Although he described all of these conditions as "severe" impairments, after considering them individually and in combination, he concluded that they did not meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Appendix 1 to Subpart P. Field's allegations of pain and functional limitations were deemed "not fully credible." Concluding that Fields can perform past relevant

---

[2]Systemic lupus erythematosus ("SLE") is an inflammatory autoimmune disorder that may affect multiple organ systems. R. 20 n.1, *citing* CURRENT MEDICAL DIAGNOSIS & TREATMENT, 37th Ed. (1998) Chapter 20 *Arthritis and Musculoskeletal Disorders*.

[3]Arthralgia is joint pain while myalgia refers to muscle pain. *Stedman's Medical Dictionary* 149, 1167 (27th ed. 2000).

[4]Dysthymic disorder is a more recent term for "depressive neurosis." Depressive neurosis is a chronic disturbance in mood characterized by depression, but not as severe as Major Depression. Because depression is involved, there is a decrease in interests and pleasures." R. 24, n.4, *citing* DAVID A. MORTON, III, M.D., MEDICAL PROOF OF SOCIAL SECURITY DISABILITY, (St. Paul, MN: West Publishing Co., 1996) Glossary 28: (Supp).

[5]Fields underwent a left breast ultrasound on April 3, 2002, which revealed a "probably benign, left breast palpable mass/probable fibroadenoma." (R.22). After his consultative musculoskeletal examination on January 31, 2003, Dr. Scott A. Bell listed a "painful left breast nodule" among his diagnoses for Fields. (R. 28). Dr. Brian R. Whyte "excised [this] left breast mass" measuring "about two centimeters" on February 5, 2003; when Fields "presented on April 8, 2003, complaining of intermittent shooting pain of the incision area and a 'hard lump', Dr. Whyte "observe[d] that the incision was healing nicely" and his impression was " postoperative pain." *Id*.; R. 428.

work, the ALJ found that she retains the residual functional capacity ("RFC") to perform the exertional demands of light work with specified nonexertional capabilities/limitations. He determined further that Fields has acquired skills that will transfer to other jobs within her RFC, and in reliance on the vocational expert's testimony, that she can perform a significant number of unskilled, light jobs existing in the regional or national economy. Accordingly, the ALJ concluded that Fields is not disabled.[6]

### III.  ISSUES

Contrary to explicit instructions, Fields identifies only the general issue for judicial review in every social security appeal – whether the ALJ's decision is supported by substantial evidence and the application of correct legal standards.[7] ***Plaintiff's counsel is advised that hereafter similar non-compliance with this court's order will result in rejection of the brief.***

It appears that Fields challenges the ALJ's analysis at steps three, four and five of the five-step sequential evaluation process.[8] She claims error in the ALJ's step-three determination that her

---

[6]R. 34-36.

[7]*See Memorandum Of Law In Support Of Plaintiff's Argument* at 1 ("*Pl.'s Br.*") and *Order* filed June 15, 2004 (Doc. 4) (directing Plaintiff to include in her brief a section titled "Statement of Issues" which "shall state in a concise, specific manner each issue which the plaintiff presents to the court for resolution").

[8]The sequential evaluation process is described succinctly in *Davis v. Shalala*, 985 F. 2d 528, 532 (11th Cir. 1993):

> In *step one* of the sequential evaluation, the Secretary determines only *whether a claimant is engaged in substantial, gainful activity* and gives no consideration to a claimant's alleged disabilities either separately or in combination. *See* 20 C.F.R. §416.923. In sequential evaluation *step two, the Secretary determines whether a claimant has a "severe" impairment* or combination of impairments that causes more
> (continued...)

severe impairment of systemic lupus erythematosus ("SLE") does not meet or equal the severity requirements for SLE at Listing 14.02(A)(11). With respect to the ALJ's steps four and five assessments of her residual functional capacity, Fields contends that he improperly relied on vocational expert testimony which is unsupported by substantial evidence. Because error in the ALJ's step-three determination dictates remand for further development of the record and a consequent reassessment of the claimant's residual functional capacity, discussion is limited to that error.

## IV.  DISCUSSION

### A.  Burden of Proof

To claim the presumption of disability which arises if a severe impairment meets or equals a disability described in the Listing of Impairments, 20 C.F.R. Part 404, Appendix 1 to Subpart P, the claimant has the burden to establish that the impairment is evidenced by all of the specific medical criteria for the listed impairment:

> Each impairment [in the Listings] is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet

---

[8](...continued)
than a minimal limitation on a claimant's ability to function. *See* 20 C.F.R. §416.2( c ). If the Secretary finds, at step two, "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." *See* 20 C.F.R. §416.923. In sequential evaluation *step three*, the Secretary determines *whether a claimant's impairment meets or equals a disability described in the Listing of Impairments* which describes impairments that are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. §§416.920(d), 416.925(a). Finally, in sequential evaluation *steps four and five, the Secretary makes an assessment of a claimant's residual functional capacity*, in light of a claimant's past work, experience, age, and education. *See* 20 C.F.R. §§416.920(e) and 416.920(f). (emphasis added).

>   all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Zebley v. Sullivan*, 493 U.S. 521, 530 (1990). "Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *see Wilkinson on Behalf of Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987); *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).

*Section 14.00B.1* supplies the "specific diagnostic features that should be documented in the clinical record..." for SLE:

>   This disease is characterized clinically by constitutional symptoms and signs (e.g., fever, fatigability, malaise, weight loss), multisystem involvement and, frequently, anemia, leukopenia, or thromocytopenia. Immunologically, an array of circulating serum auto-antibodies can occur, but are highly variable in pattern. Generally the medical evidence will show that patients with this disease fulfill The 1982 Revised Criteria for the Classification of Systemic Lupus Erythematosus of the American College of Rheumatology. (Tan, E.M., et al., Arthritis Rheum. 25:11271-1277, 1982).

SLE must be "[d]ocumented as described in *14.00B1,* with" *either* one of eleven "involvements" described at *14.02.A* – including the "mental involvement" on which Fields relies – *or* the involvement with symptoms to the extent described at *14.02.B*

### B.    Analysis

Fields contends that the ALJ's conclusion that her SLE does not satisfy Listing 14.02(A)(11) reflects two reversible errors: first, his inappropriate reliance "upon the testimony of the medical advisor at the hearing, Dr. Jack P. Evans"; and second, his incorrect interpretation of the listing,

which "requires a mental <u>involvement</u>, not a mental <u>impairment</u> as the ALJ states in his decision."[9] The Commissioner responds by insisting that "Listing 14.02A.11 requires that Plaintiff meet a mental listing as well as have a diagnosis of SLE."[10]

Because the ALJ's conclusion is not supported by the requisite substantial evidence, the court declines to decide whether the "mental involvement" specified at Listing 14.02(A)(11) requires evidence of a listed mental impairment.[11] The ALJ acknowledged his exclusive reliance on the opinion of the consultative medical examiner, as Fields contends:

> The third step requires determination of whether these impairments meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. No treating or examining source or medical expert has so concluded. In addition, I examined the record, and find that the evidence does not support such a conclusion. *In regard to the claimant's lawyer's contention that the claimant's impairments meet or equal listings 14.02 and/or 5.05, I disagree, for the same reasons given by Dr. Evans.* I have also considered Medical Listings 12.04 and 14.09. Thus, the claimant's severe and not severe impairments, considered singularly and in

---

[9]Fields' case for presumptive disability for SLE rests on (1) the January 24, 2002 evaluation by treating physician, Dr. Sohrab Fallahi, who assessed her with an "element of depression"; (2) the January 30, 2003 psychological evaluation of Dr. Peggy Thornton, a licensed psychologist, who diagnosed dysthymic disorder and opined that Fields would have a marked degree of impairments in the ability to maintain attention, concentration or pace for periods of at least two hours; and (3) the medical expert's testimony confirming her diagnosis of SLE. Fields maintains that because the expert, Dr. Evans, is not qualified to evaluate the "mental involvement" requirement of the Listing, the ALJ's adverse decision cannot be supported by substantial evidence. *Pl.'s Br.* at 10-11.

[10]*Def.'s Br.* at 10 ("Listing 14.02A.11 requires that an individual meet the requirements of one of the mental listings found at 12.00 and following (citations omitted) . . .[T]he record does not support a finding that Plaintiff meets the requirements of any of the mental listings.").

[11]Contrary to the Commissioner's contention, this issue is not resolved by reference to 58 FR 36008, 36028, *Dowles v. Barnhart*, 238 F.Supp.2d 4678, 488 (W.D.La. 2003) or *Griffith v. Barnhart*, 2002 WL 181959 at *10-11 (N.D. Ill. 2002), and this court's research discloses no case law which squarely reaches the question. While principles of logic would appear to dictate a construction which mirrors the phraseology of the listing, judicial review on such an important issue of first impression should be grounded first on an administrative record which is fully developed on medical documentation for the nature and severity of the "mental involvement" claimed by Fields.

combination, are not of listing-level severity.[12]

Next to be considered is the relevant testimony of Dr. Jack Evans, who readily confirmed the record of medical evidence supporting Fields' diagnosis with SLE. On the question of documentation for the "mental involvement" claimed by Fields, however, Dr. Evans just as readily underscored the absence of relevant medical records and, equally if not more importantly, his lack of medical expertise to offer an opinion due to be accorded any substantial or great weight:

> *Q*: Would you please tell us, based upon your education, training and experience, and your review of the medical record, what medical condition or conditions the claimant has.
>
> *A*: *She has systemic lupus erythematosus.*
>
> *Q*: All right. Are you familiar with the medical listings of the commissioner?
>
> *A*: Yes, sir.
>
> *Q*: Again, based upon your education, experience and training and your review of the medical record in this case, do you have any opinion as to whether or not the claimant's medical impairments, individually and/or in combination, meet or equal any of those listings?
>
> A: I *have an opinion and it is that she does not meet 14.02.*
>
> *Q*: Okay. All right. *With regards to 14.02A, counsel has sited [sic] numbers 10 and 11, could you please explain why, in your opinion, the claimant's medical condition does not meet the criteria for either the neurological development– involvement as defined in– I believe that should be 11.00F or 11 mental involvement as described in 12.00?*
>
> *A*: Well, there's– no where in the record is there any evidence of any neurological impairment. She does have a mild situs, which is a muscle impairment, secondary to the lupus, but there was no record that I see of any neurological impairment. *The mental involvement–there was mention of depression. There was one, I think, psychological evaluation that said dystonic [sic] disorder, but that was the only reference I found as far as the mental is concerned. In 11F, the examination by Dr. Bell (Phonetic) on 1/3/03 did state that she did not seem to be thinking clear, but I see no– or I have no psychological evaluations that out stand in the chart and it may be– and again psychology is a little bit out of my–*
> \*\*\*

---

[12]R. 29 (emphasis added).

8

> *Q:*  Yeah, well there was a, a section – Exhibit 10F was psychological by Dr. Thorton (phonetic)
>
> *A:*   Right and that's a dysthymic disorder, rule out malingering and that's the only one I saw and again, *if you want to get to the psychological, that's a little bit out of my expertise.*[13]

(R. 470-71 )(emphasis added).

Given Dr. Evan's admitted lack of qualifications to render expert evaluations and opinions on the record evidence of Field's dysthmyic disorder or depressive neurosis, or on any other kind of mental or psychological involvement or impairment, the ALJ committed clear and reversible error in relying solely on Dr. Evans for his adverse determination of Field's disability under Listing 14.02(A)(11).  Dr. Evans did not and could not offer any reason at all to sustain the ALJ's conclusion"for the reasons given by Dr. Evans."

The ALJ has a basic duty to develop the record fully and fairly whether or not a claimant is represented by counsel. *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Cowart,* 662 F. 2d at 735 (11th Cir. 1981).  For the ALJ's  evaluation of  a mental involvement, impairment, or similar disorder, the relevant medical evidence must be sufficiently complete and detailed as to symptoms, signs, and laboratory findings to permit an independent determination.[14] If pertinent evidence from medical and non-medical sources is either inconclusive or incomplete in material aspects, the ALJ

---

[13]Dr. Evans graduated from medical school in 1959, received board certification in Internal Medicine in 1967, and retired in January 2000 from an internal medicine practice which spanned 35 years.  His resume includes no education, training, practice, or expertise in any mental illness or issue relating to mental involvements and impairments. (R.57).

[14] *See, e.g.*,  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00D (requiring sufficient evidence (1) to establish the presence of a medially determinable mental impairment, (2) to assess the degree of functional limitation the impairment imposes, and (3) to project the probable duration of the impairment).

is duty-bound to order supplemental testing and/or to secure additional opinions from qualified experts.[15]

Close scrutiny of this record discloses the need for further clarification of Fields' depression and similar symptoms, and additional testing may be warranted to document the extent of any mental involvement implicated by the consultative psychological diagnosis of *dysthymic disorder, rule out malingering*[16] With respect to Fields' cognitive functioning, Dr. Thornton, the consultative examiner, reported "[v]ague or obscure mentation and strange sensory experiences produce much uneasiness about the way that her mind is working"er time sleeping or daydreaming."[17] Concerning the validity of Fields' I.Q. scores on the Wechsler Adult Intelligence Scale- Third Edition, Dr. Thornton cautioned:   " *It is not clear whether her poor effort was due to mental confusion or malingering,* but her scores are so low as to make little sense, when considered with her successful

---

[15] *See, e.g., Reeves v. Heckler*, 734 F. 2d 519, 522 n. 1 (11th Cir. 1984)(ALJ's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.); *see* 20 C.F.R. §416.912(f)("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations."); 20 C.F.R. 416.919a; *McCall v. Bowen,* 846 F. 2d 1317, 1320 (11th Cir. 1988);  20 C.F.R. § 416.919p ("If a report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."); *Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981)(ALJ must elicit clearly relevant and readily available testimony).

[16] According to Dr. Thornton, Fields "did evince some difficulty in remaining focused on the questions at hand.  Her speech was somewhat impoverished and her response time to several of the questions was quite slow. [Fields] "*appears overwhelmed by multiple physical and emotional problems.  These include somatic symptoms, depression, and emotionally reactive personality style, and mental confusion.*  The variety of difficulties, magnitude of her suffering, and insecurity suggest a self-image as inadequate, helpless, and defeated." (R. 365-66)(emphasis added).

[17] R. 366.

completion of high school and her valid performance on the MMPI-II on this day.[18]

The insufficiency of this record for any determinative Listing 14.02(A)(11) assessment of Fields' referenced "mental confusion" and depression is buttressed by this relevant report from the consultative physical examination administered by Dr. Scott Bell on January 31, 2003:

> Thinking not clear. She has had problems with this for the past year. She has trouble finding things, trouble reading. Sometime she will have associated frontal tension type headache. She also has difficulty completing tasks such as playing games with her nieces. . . .It is difficult to assess her cognitive and intellectual functioning because she tends to have some difficulty with comprehension when trying to get a history from her."[19]

In diagnosing Fields with SLE, Dr. Bell opined that Fields "may have some relevant communicative problems regarding her cognitive and intellectual functioning that may be secondary to her lupus," adding that she *would benefit from further neuropsychiatric testing*"to elucidate any "possibly related cognitive dysfunction"[20] (emphasis added).

Finally, because the ALJ lacked a sufficient evidentiary basis for a Listing §14.02(A)(11) determination, his adverse determination of her disability under §14.02(B)[21] – grounded on the opinion of Dr. Evans[22] – is not credible. "[An] administrative decision is not supported by

---

[18] R. 366. (emphasis added).

[19] R. 370.

[20] R. 373.

[21] Listing §14.02(B) requires " Lesser involvement of two or more organs/body systems listed in paragraph A, with significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise and weight loss. At least one of the organs/body systems must be involved to at least a moderate level of severity."

[22] R. 471-72.

substantial evidence if the administrative law judge does not have before him sufficient facts on which to make an informed decision." *Ford v. Secretary of Health & Human Servs.*, 659 F. 2d 66, 69 (5th Cir.1981).

## V.  CONCLUSION

For the reasons explained in this *Memorandum Opinion*, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED**, pursuant to *sentence four* of 42 U.S.C. §405(g), for further development of the record in order to assess the merits of Fields' claim to a Listing §14.02(A)(11) disability for her *systemic lupus erythematosus*.

A separate judgment will be entered.

Done this 22nd day of August, 2005.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE